UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| MARIA G. CASTANEDA, | § § § | |
| Plaintiff, | § § | |
| v. | § § | EP-19-CV-00338-FM |
| VOLT MANAGEMENT CORP. d/b/a VOLT WORKFORCE SOLUTIONS; SCHNEIDER ELECTRIC BUILDINGS AMERICAS, INC. d/b/a SCHNEIDER ELECTRIC; and SCHNEIDER ELECTRIC USA, INC. d/b/a SCHNEIDER ELECTRIC, | § § § § § § § § § § | |
| Defendants. | § | |

## ORDER COMPELLING ARBITRATION AND STAYING CASE

Before the court is "Defendant Volt Management Corp. d/b/a Volt Workforce Solutions' Motion to Compel Arbitration" ("Motion") [ECF No. 19], filed March 31, 2020 by Defendant Volt Management Corp. d/b/a Volt Workforce Solutions ("Volt"); "Schneider Electric Defendants' Notice of Non-Opposition to Motion to Compel Arbitration" ("Notice of Non-Opposition") [ECF No. 20], filed April 7, 2020 by Defendants Schneider Electric USA, Inc. d/b/a Schneider Electric and Schneider Electric Buildings Americas, Inc. d/b/a Schneider Electric (collectively, the "Schneider Electric Defendants"); "Plaintiff's Response to Defendant Volt Management Corp. d/b/a Volt Workforce Solutions' Motion to Compel Arbitration" [ECF No. 21], filed April 7, 2020 by Maria G. Castaneda ("Plaintiff"); and "Reply Brief in Support of Defendant's Motion to Compel Arbitration" ("Reply") [ECF No. 22], filed April 14, 2020 by Volt. Therein, Volt requests the court compel arbitration and dismiss this cause.[1] Upon

---

[1] "Defendant Volt Management Corp. d/b/a Volt Workforce Solutions' Motion to Compel Arbitration" ("Mot.") 1, ECF No. 19, filed Mar. 31, 2020.

1

due consideration of the Motion, Notice of Non-Opposition, Response, Reply, and applicable law, the court Motion is **GRANTED IN PART AND DENIED IN PART**.

## I. BACKGROUND

*A. Factual Background*

This case arises out of an employment dispute between the Schneider Electric Defendants, Volt, and Plaintiff. Volt is a temporary employee leasing agency that leases employees to Schneider Electric Defendants.[2] Volt hired Plaintiff as an on-site coordinator at Schneider Electric USA, Inc. to manage human resources issues with respect to employees leased by Volt to Schneider Electric.[3] Plaintiff alleges disability discrimination and retaliation by both Volt and Schneider Electric Defendants.[4]

Volt argues Plaintiff agreed on multiple occasions to submit any employment-related claims to arbitration.[5] First, Plaintiff's employment application contained an agreement to arbitrate "any dispute, controversy or claim arising out of, involving, affecting or related in any way to . . . your employment or the termination of your employment."[6] Plaintiff completed this application electronically and submitted it via email.[7] Volt asserts its employment agreement contained a similar provision submitting to arbitration "arising out of, involving, affecting or related in any way to Employee's employment or the conditions of employment or the

---

[2] "Schneider Electric Defendants' Notice of Removal," ECF No. 1, filed Nov. 22, 2019, "Plaintiff's Original Petition with Jury Demand and Request for Disclosure" ("Pet.") 3 ¶ 14, ECF No. 1-1.

[3] Pet. 3 ¶ 15.

[4] *Id.* at 7 ¶ 45.

[5] Mot. 1.

[6] *Id.* at 2; Mot., "Maria G. Castaneda's Employment Application and Reference List," ECF No. 19-1.

[7] *See id.*

termination of Employee's employment."[8] However, it cannot locate the signed employment agreement.[9] Volt's Senior Vice President of Human Resources, Kendra Bellman, states Plaintiff received a copy of the employment agreement with her offer letter and was told she would sign the employment agreement on her first day of employment.[10] Volt also provides a copy of the email with the employment agreement attached.[11] Plaintiff's offer letter states the employment agreement contains an arbitration clause and signing the employment agreement was a condition of employment.[12]

In addition to the two agreements Volt asserts Plaintiff signed, Volt also contends its In-House Employee Handbook ("Handbook") contains an Alternative Dispute Resolution Policy explaining its policy to arbitrate disputes.[13] The Handbook states that acceptance of its policies is a condition of employment.[14] Volt distributed the Handbook to all employees, including Plaintiff.[15]

### B.   *Parties' Arguments*

Volt contends Plaintiff's employment discrimination and retaliation claims must be referred to arbitration.[16] Volt argues the arbitration provisions in both the application for

---

[8] Mot. 2; "Declaration of Kendra Bellman" ("Bellman Decl.") 2 ¶¶ 5–6, ECF No. 19-1.

[9] Mot. 2 n. 1.

[10] *See* Bellman Decl. 3 ¶ 7; Mot., "Email to Maria G. Castaneda Dated September 30, 2014" ("Sept. 30 Email") ECF No. 19-1 ("You will sign original documents on your first day with Volt.").

[11] *See generally*, Sept. 30 Email.

[12] *Id*; Mot., "Offer Letter" 1, ECF No. 19-1.

[13] Mot. 4.

[14] *Id.* at 3.

[15] *Id.* at 5; Bellman Decl. 4 ¶ 10.

[16] Mot. 8.

employment and the employment agreement are binding.[17] Even were they not, Volt's Handbook made compliance with is alternative dispute resolution policy a condition of Plaintiff's at-will employment.[18] Finally, Volt requests that, if the court compels arbitration, this action be dismissed.[19]

Plaintiff responds that no valid arbitration agreement exists as neither the employment application nor the employment agreement contain Plaintiff's signature.[20] Additionally, she argues she was not bound by the alternative dispute resolution clause in the Handbook as she did not have notice of it.[21] In the alternative, Plaintiff argues that even if there were a valid arbitration agreement, the court should not refer this action to arbitration as the Schneider Defendants are not parties to the arbitration agreement.[22] Plaintiff contends that compelling arbitration would cause multiple and contradicting determinations in different forums.[23]

## II.   LEGAL STANDARD

In adjudicating a motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), "[c]ourts perform a two step inquiry to determine whether to compel a party to arbitrate: first whether parties agreed to arbitrate and, second, whether federal statute

---

[17] *Id.* at 1.

[18] *Id.* at 3–4.

[19] *Id.* at 7–8.

[20] "Plaintiff's Response to Defendant Volt Management Corp. d/b/a Volt Workforce Solutions' Motion to Compel Arbitration" ("Resp.") 1, ECF No. 21, filed Apr. 7, 2020.

[21] *Id.* at 3.

[22] *Id.* at 5.

[23] *Id.* at 6.

or policy renders the claims nonarbitrable."[24] "The courts divide the first step into two more questions: whether a valid agreement to arbitrate exists and whether the dispute falls within that agreement."[25] In determining whether the dispute falls within the arbitration agreement, courts should apply "ordinary state-law principles that govern the formation of contracts."[26] The FAA establishes a strong federal policy in favor of enforcing arbitration agreements.[27] In ruling on the motion to compel, the court should resolve any doubts about the arbitrability of a claim in favor of arbitration.[28]

## III. DISCUSSION

### A. Evidentiary Concerns

Hearsay is a statement that is offered "to prove the truth of the matter asserted"[29] and is generally inadmissible.[30] Contracts and all writings with independent legal significance are verbal acts rather than assertions.[31] The admission of a contract to prove the operative fact of that contract's existence thus cannot be the subject of a valid hearsay objection.[32] As such, they

---

[24] *Robinson v. J&K Admin. Mgmt. Servs., Inc.*, 817 F.3d 193, 195 (5th Cir. 2016) (citing *Dealer Comput. Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 886 (5th Cir. 2009).

[25] *Id.*

[26] *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

[27] *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *In re Dillard Dept. Stores, Inc.*, 181 S.W.3d 370, 375 (Tex. 2005) *(citing J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003); *Prudential Secs., Inc. v. Marshall*, 909 S.W.2d 896, 898–99 (Tex. 1995)).

[28] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *Jones v. Halliburton Co.*, 583 F.3d 228, 235 (5th Cir. 2009) (citations omitted).

[29] FED. R. EVID. 801(c).

[30] FED. R. EVID. 802.

[31] *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 540 (5th Cir. 1994); *Casey v. Western Oil and Gas, Inc.*, 611 S.W.2d 676, 680 (Tex. App.—Eastland 1980 writ ref'd n.r.e.).

[32] *See, e.g., United States v. Cont'l Cas. Co.*, 414 F.2d 431, 434 (5th Cir.1969) (with verbal acts the "inquiry is not the truth of the words said, but merely whether they were said"); *Byrd Int'l of Dallas, Inc. v. Elec.*

are excluded from the definition of hearsay and are admissible evidence under any standard.[33]

Under the best evidence rule, a party seeking to prove the content of a writing, must produce the original writing itself.[34] An "original" writing includes any "printout—or other output readable by sight—if it accurately reflects the information it contains."[35] A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate.[36]

Plaintiff argues the arbitration provisions contained in the employment application, employment agreement, and the Handbook should be disregarded as hearsay.[37] However, as documents with independent legal significance, all three challenged documents are non-hearsay and admissible as evidence of a legally operative fact—whether Plaintiff agreed to arbitrate disputes with Volt.

Plaintiff argues the arbitration provisions contained in the employment application, employment agreement, and the Handbook are inadmissible under the best evidence rule.[38] However, the employment application emailed by Plaintiff to Volt is an electronically stored

---

*Data Sys. Corp.*, 629 S.W.2d 177, 179 (Tex. App.—Dallas 1982, writ ref'd n.r.e.) ("Since the utterance or writing of the words is itself the fact to be proved, the admission into evidence of this "verbal act" is not hearsay.").

[33] FED. R. EVID. 801, Adv. Comm. Note. ("The effect is to exclude from hearsay the entire category of "verbal acts" and "verbal parts of an act," in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights.").

[34] FED. R. EVID. 1002.

[35] FED. R. OF EVID. 1001. *See also Time Ins. Co. v. Estate of White*, 447 Fed. App'x. 561, 565 (5th Cir. 2011) (an electronically stored insurance policy documents qualify as original documents).

[36] FED. R. EVID. 1003. *See also Myrick v. United States*, 332 F.2d 279 (5th Cir. 1964) (holding there was no error in admitting copies of checks instead of original microfilm in absence of suggestion that copies were incorrect); *Johns v. United States*, 323 F.2d 421 (5th Cir. 1963) (holding it was not error to admit concededly accurate tape recording made from original wire recording).

[37] Resp. 7.

[38] *Id.*

6

original document; therefore, there is no question as to its admissibility.[39] The Handbook and employment agreement are duplicates and therefore admissible to the same extent as an original unless there is a genuine question as to their authenticity or the circumstances make it unfair to admit the duplicate.[40] Plaintiff fails to raise a genuine question about the authenticity of Defendant Volt's exhibits. While Plaintiff asserts she did not sign the agreements and did not have notice of the Handbook provision,[41] neither argument calls into question the authenticity of the documents themselves. Nor does Plaintiff state what circumstances make it unfair to admit the documents. Therefore, the best evidence rule does not bar consideration of Volt's exhibits.

*B.   A Binding Arbitration Agreement Exists and the Dispute is within its Scope*

Under Texas law, the party attempting to compel arbitration bears the burden of establishing a valid arbitration agreement the scope of which includes the claims asserted.[42] Once the party seeking to compel arbitration proves a valid arbitration agreement exists, the burden shifts to the party resisting arbitration to establish a defense to enforcement.[43]

A party is bound to an arbitration agreement if she received notice of the agreement and accepted it.[44] Although the FAA requires an agreement to arbitrate be in writing, it contains no requirement the writing be signed by the parties and may be enforceable without a signature.[45]

---

[39] *See* FED. R. EVID. 1001; *Time Ins. Co.*, 447 Fed. App'x. at 565.

[40] *See* FED. R. EVID. 1003.

[41] Resp. 3–4.

[42] *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 605 (Tex. 2005) (citing *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999) (per curiam); *Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996) (per curiam)).

[43] *Id.* (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003)).

[44] *In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161, 163 (Tex. 2006).

[45] *Valero Ref., Inc. v. M/T Lauberhorn*, 813 F.2d 60, 64 (5th Cir. 1987); *In re Macy's Texas, Inc.*, 291 S.W.3d 418, 419 (Tex. 2009). *See also* 9 U.S.C. § 3 (requiring only that an agreement to arbitrate be in writing).

Texas contract law principles require only an intent by the parties to be bound, regardless of whether that intent is memorialized by signatures.[46] In the absence of a signature, other evidence must be relied upon to prove the party's unconditional assent.[47] Whether the parties intended to be bound is often a question of fact, but it may be resolved by the court as a matter of law, especially where the contract is in writing.[48]

As the agreements are admissible, the court must determine whether the parties intended to be bound by them. Plaintiff's email exchange with Volt demonstrates her intent to be bound to the arbitration provision in her employment application. Plaintiff filled out the employment application and returned it to Volt without disputing any of its terms.[49] The email states the application is "complete" and provides reference information Plaintiff.[50] It is clear from the email that Plaintiff intends the application to entitle her to consideration for employment with Volt. Plaintiff did not reject the terms in the employment application or qualify her interest in employment. Plaintiff's only argument that she did not accept the arbitration provision in the employment application is the absence of her signature on the agreement. However, Texas law

---

[46] *Simmons & Simmons Const. Co. v. Rea*, 286 S.W.2d 415, 418 (Tex. 1955).

[47] *In re Bunzle USA*, 155 S.W.3d 202, 209 (Tex. App.—El Paso 2004, no pet.). *See also Savoy v. National Collegiate Student Loan Trust 2005-3*, 557 S.W.3d 825, 835 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (holding a contract enforceable where one party did not sign but accepted "by his acts, conduct, or acquiescence to the terms"); 1 CORBIN ON CONTRACTS § 2.10 (2019) ("An unsigned agreement, all the terms of which are embodied in a writing, unconditionally assented to by both parties, is a written contract. Their expressions of unconditional assent must be proved by testimony since it is not evidenced by the writing itself.")

[48] *WTG Gas Processing, L.P. v. ConocoPhillips Co.*, 309 S.W.3d 635, 643 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). *See also Chalker Energy Partners III, LLC v. Le Norman Operating LLC*, 595 S.W.3d 668, (Tex. 2020) (holding that, as a matter of law, there was no definitive agreement by the parties to be bound); *Lone Star Steel Co. v. Scott*, 759 S.W.2d 144, 157 (Tex. App.—Texarkana 1988, writ denied) ("Once a determination has been made as to what passed between the parties, decisions as to whether their agreement meets the legal requirements of a contract and its interpretation are questions of law.").

[49] Mot., "Email from Maria G. Castaneda Dated August 15, 2014," 19-1.

[50] *Id.*

8

does not require a signature to show assent to be bound.[51] In this case, Plaintiff's acceptance of the terms in the application employment is clear from the context of the email exchange even without a signature.[52] Therefore, Volt has met its burden of establishing a valid arbitration agreement in the employment application.

Volt also meets its burden with respect to the employment agreement. Volt emailed Plaintiff a copy of the employment agreement containing the arbitration provision and an offer letter.[53] The offer letter stated that "Volt requires [Plaintiff] to sign a comprehensive written Employment Agreement, which includes . . . arbitration . . . provisions, among others, as a condition of [Plaintiff's] employment."[54] Plaintiff responded, "Offer letter accepted."[55] Volt cannot now locate the employment agreement it claims Plaintiff signed.[56] However, Plaintiff had notice that acceptance of terms in the employment agreement, including submission of disputes to arbitration, was a condition of her employment.[57] Plaintiff's response shows unconditional assent to the terms of the letter. Additionally, Plaintiff never states she did not sign the employment agreement. Instead, she claims Volt's exhibits are inadmissible and, even were they not, the absence of her signature on Volt's exhibits makes the agreements

---

[51] *Simmons & Simmons Const. Co. v. Rea*, 286 S.W.2d 415, 418 (Tex. 1955).

[52] *See Tricon Energy Ltd. v. Vinmar Intern., Ltd.*, 718 F.3d 448, 453–54 (5th Cir. 2013) (upholding a district court's order compelling arbitration where an employee demonstrated assent to be bound to an employment agreement's arbitration provision in an email exchange with her employer).

[53] Sept. 30 Email.

[54] Offer Letter.

[55] Mot., "Email from Maria Castaneda Dated September 30, 2014" ECF No. 19-1.

[56] Mot. 2 n. 1.

[57] *See In re Dallas Peterbuit, Ltd.*, 196 S.W.3d 161, 163 (Tex. 2006) (An employer may enforce an arbitration agreement entered into during an at-will employment relationship if the employee received notice of the employer's arbitration policy and accepted it. . . our cases do not confine that "notice analysis" to the underlying agreement, but to all communications between the employer and employee.").

9

unenforceable.[58] Both arguments have been addressed and are meritless. In sum, Volt met its burden to prove a valid arbitration agreement exists and Plaintiff has not made a valid argument against enforcement.

Plaintiff's claims fall within the scope of both arbitration agreements. The employment application requires arbitration of any dispute "arising out of, involving, affecting or related in any way to your employment or the conditions of your employment or the termination of your employment."[59] The employment agreement contained substantially similar language. As Plaintiff is asserting unlawful disability discrimination and retaliation by her employer, this case involves a dispute arising out of both conditions of Plaintiff's employment and her termination. Therefore, her claims against Volt are within the scope of the arbitration agreements.

The court need not address whether Plaintiff was bound by the alternative dispute resolution policy in the Handbook. An employer may change the terms of an at-will employment contract upon proper notice and assent by the employee.[60] However, the arbitration language of the policy is substantially the same as the language in the employment application and the employment agreement. Volt has already established an arbitration agreement was a condition of employment pursuant to those initial agreements. Further examination of substantially the same condition as contained within the Handbook is unnecessarily cumulative.

---

[58] Resp. 2–3.

[59] Mot. 2.

[60] *In re Haliburton Co.*, 80 S.W.3d 566, 568 (2002) (citing *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227, 229 (Tex. 1986).

C. *Intertwined Claims Estoppel Permits Arbitration of Claims against the Schneider Electric Defendants*

"As a general rule, an arbitration clause cannot be invoked by a non-party to the arbitration contract."[61] This is because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit."[62] However, a non-signatory to an arbitration agreement may be compelled to arbitrate a claim "if the relevant state contract law so permits."[63]

Intertwined claims estoppel involves "compelling arbitration when a nonsignatory defendant has a 'close relationship' with one of the signatories and the claims are 'intimately founded in and intertwined with the underlying contract obligations.'"[64] Courts have employed this exception against signatory plaintiffs to dismiss strategic pleadings that seek to avoid arbitration by bringing suit against a non-signatory as well as the other signatory.[65] Other courts have adopted this theory of estoppel to compel arbitration.[66] The Texas Supreme Court has not expressly adopted intertwined claims estoppel as a valid theory of estoppel.[67] Texas courts of

---

[61] *G.T. Leach Builders, LLC v. Saphire V.P., LP*, 458 S.W.3d 502, 524 (Tex. 2015) (citing *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 532 (5th Cir. 2000)) (internal quotation marks omitted). *See also Moses H. Cone Mem'l Hosp.*, 460 U.S. at 19-20 (compelling arbitration of Plaintiff's claim against one defendant but not compelling arbitration of another defendant that had not signed an arbitration agreement and against whom Plaintiff had a distinctly separate claim).

[62] *See May v. Higbee Co.*, 372 F.3d 757, 763 (5th Cir.2004) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)).

[63] *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 261-62 (5th Cir. 2014) (citing *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624 (2009).

[64] *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 193–94 (Tex. 2007) (quoting *Thomson–CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995)).

[65] *Id.* at 194 (citations omitted).

[66] *See, e.g., Ragone v. Atlantic Video at Manhattan Center*, 595 F.3d 115, 127–28 (2d Cir. 2010) (applying New York law); *Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 395–96 (4th Cir. 2005) (applying South Carolina law); *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (applying Alabama law).

[67] *Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 610 (5th Cir. 2016).

11

appeals are currently divided in their acceptance of this theory of estoppel.[68] However, in *Hays v. HCA Holdings, Inc.*, the Fifth Circuit made an "*Erie* guess" that "the Texas Supreme Court, if faced with the question, would adopt intertwined claims estoppel."[69]

Indisputably, Plaintiff never signed an agreement to arbitrate any claims against the Schneider Electric Defendants. Plaintiff asserts it cannot be compelled to arbitrate its dispute against the Schneider Electric Defendants by virtue of its agreement with Volt.[70] However, Plaintiff raises the same causes of action against both Volt and the Schneider Electric Defendants.[71] She supports her claims with virtually identical facts and does not specifically allege anything different against any defendant individually.[72] Further, Plaintiff's claim is rooted in the terms of her employment, subject to the employment application and employment agreement. While Plaintiff was hired by Volt, an employee leasing business, she performed services exclusively for the Schneider Electric Defendants who relied on the employment agreement with Volt and could be understood as a co-employer.[73] Based on Plaintiff's allegations, it is clear that Plaintiff regarded the claims against both defendants as closely related and that the discrimination and retaliation claims against each are intertwined with the

---

[68] *Id.* (comparing *Cotton Commercial USA, Inc. v. Clear Creek Indep. Sch. Dist.*, 387 S.W.3d 99, 105–06 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (stating that the Texas Supreme Court in *Merrill Lynch* recognized intertwined claims estoppel) with *Glassell Producing Co. v. Jared Res., Ltd.*, 422 S.W.3d 68, 82 (Tex. App.—Texarkana 2014, no pet.) (describing direct benefits estoppel as "the only form of equitable estoppel recognized in Texas")).

[69] *Id.* at 611–12.

[70] Resp. 5.

[71] Pet. 7 ¶ 45.

[72] *See id.*

[73] *Cf. Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 228–29 (5th Cir. 2015) (holding a staffing agency and a client company may be considered joint employers for the purposes of evaluating violations of the Americans with Disabilities Act if the client company exercises sufficient control).

12

underlying employment contract obligations. Therefore, the pleadings suggest application of intertwined claims estoppel is appropriate in this case.

Additionally, this case implicates the judicial concern underpinning intertwined claims estoppel—that plaintiffs may use strategic pleading to avoid arbitration by bringing suit against a nonsignatory.[74] Had Plaintiff sued Volt alone, the arbitrability of the dispute would have been clear. Other judicial concerns also favor arbitration. Compelling arbitration against all defendants in this case conforms with Texas law's preference for joint resolution of multiple claims to prevent multiple and possibly contradictory determinations of the same matter.[75] Although Plaintiff argues this weighs against arbitration, this argument also supports referring all parties to arbitration, which also achieves a single determination. Finally, compelling arbitration supports the strong state and national policy in favor of arbitration.[76] In sum, Plaintiff must be compelled to arbitrate its dispute against both Volt and the Schneider Electric Defendants as intertwined claims estoppel and special judicial concerns apply.

The Schneider Electric Defendants are equivocal in their agreement to arbitrate. They "do not oppose" the Motion, but do not affirmatively submit to be bound by arbitration.[77] However, as intertwined claims estoppel applies, Schneider Electric Defendants are now

---

[74] *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 1994 (Tex. 2007) (quoting *Thomson–CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995)).

[75] *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 271 (Tex. 1992) (compelling arbitration of all claims) (citing *Valero Energy Corp. v. Wagner Brown*, 777 S.W.2d 564, 567 (Tex. App.— El Paso 1989 writ denied).

[76] *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *In re Dillard Dept. Stores, Inc.*, 181 S.W.3d 370, 375 (Tex. 2005) *(citing J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227 (Tex. 2003); *Prudential Secs., Inc. v. Marshall*, 909 S.W.2d 896, 898–99 (Tex.1995)).

[77] "Schneider Electric Defendants' Notice of Non-Opposition to Motion to Compel Arbitration" 1, ECF No. 20, filed Apr. 7, 2020 (The Schneider Electric Defendants "hereby notify the Court that they do not oppose Defendant Volt Management Corp. d/b/a Volt Workforce Solutions' Motion To Compel Arbitration").

compelled to participate in multi-party arbitration and are bound by its results. As such, they may not avoid their fair share of expenses associated with arbitration.

Pursuant to the arbitration provision of the employment agreement, arbitration shall be conducted "in accordance with the employment rules of the American Arbitration Association ("AAA"), which can be found at www.adr.org . . . ."[78] The employment application contains similar provision. Where the AAA employment arbitration rules refer to the "employer or company," that phrase shall be understood to mean both Volt and the Schneider Electric Defendants, including with respect to payment of costs and fees.[79] The court retains jurisdiction over any conflicts resulting from incorporation of the Schneider Electric Defendants into the arbitration process or equitable sharing of costs.

*D. Dismissal*

The FAA provides that when claims are properly referable to arbitration the court shall generally stay the trial of the action until the arbitration is complete upon request of a party.[80] However, this rule does not limit dismissal of a case in the proper circumstances.[81] A case may be dismissed when all the issues raised in the district court must be submitted to arbitration.[82]

Volt moved to dismiss this action in the event the court compelled arbitration.[83] Although Plaintiff objects to arbitration generally, she did not indicate a preference for stayed

---

[78] Mot. 2.

[79] *See generally* AMERICAN ARBITRATION ASSOCIATION, EMPLOYMENT ARBITRATION RULES AND MEDIATION PROCEDURES (2017); AMERICAN ARBITRATION ASSOCIATION, EMPLOYMENT/WORKPLACE FEE SCHEDULE (2019).

[80] 9 U.S.C. § 3.

[81] *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).

[82] *Id.*

[83] Mot. 7.

14

proceedings pending arbitration. Although the court has determined all Parties must participate in arbitration of Plaintiff's single cause of action, the court has retained jurisdiction over disputes resulting from incorporation of the Schneider Electric Defendants into the arbitration process. Therefore, a stay pending resolution of arbitration is appropriate.

## IV.   CONCLUSION

Plaintiff is subject to a valid arbitration agreement that controls the present dispute against Volt and the Schneider Electric Defendants. Accordingly, the court enters the following orders:

1. It is **HEREBY ORDERED** that "Defendant Volt Management Corp. d/b/a Volt Workforce Solutions' Motion to Compel Arbitration" [ECF No. 19] is **GRANTED IN PART AND DENIED IN PART**.

2. It is **FURTHER ORDERED** that "Request for Judicial Notice in Support of Defendant's Motion to Compel Arbitration" is **DENIED AS MOOT**.

3. It is **FURTHER ORDERED** that the above-captioned cause is **STAYED** pending completion of the arbitration process.

4. It is **FURTHER ORDERED** that the Parties **SHALL** file a status report every **90 days** from the date of this order.

5. It is **FURTHER ORDERED** that the Parties **SHALL** inform the court within **30 days** of the completion of the arbitration proceedings

**SIGNED AND ENTERED** this ___8___ day of **May, 2020.**

**FRANK MONTALVO**
**UNITED STATES DISTRICT JUDGE**